1
2
3
JS-6
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA AGUILAR,<br><br>       Plaintiff,<br><br>  vs.<br><br>WELLS FARGO BANK, N.A.<br><br>       Defendants. | Case No. ED CV 15-01833-AB (SPx)<br><br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND [DKT NO. 12]** |

1   Before this Court is Plaintiff Rosa Aguilara's[1] Motion to Remand Action to

2   State Court, filed September 30, 2015 ("Motion").  Dkt. No. 12.  Plaintiff filed this

3   action in San Bernardino Superior Court on August 6, 2015.  Not. of Removal, Ex.

4   A (Compl.), Dkt. No. 1-1.  Plaintiff served her Complaint on Defendant Wells Fargo

5   Bank, N.A. on August 13, 2015.  Not. of Removal ¶ 3, Dkt. No. 1.  Defendant

6   removed this action less than 30 days later, on September 8, 2015, asserting this

7   Court's subject matter jurisdiction based on diversity.  Not. of Removal at ¶ 9 (citing

8   28 U.S.C. § 1332(a)), Dkt. No. 1.

9   Defendant filed its Opposition to Plaintiff's Motion on October 9, 2015.  Dkt.

10   No. 14.  Plaintiff filed her Reply on October 15, 2015 as well as a "Supplemental"

11   Reply on October 19, 2015.  Dkt. Nos. 15, 17.  For the following reasons, the Court

12   **GRANTS** Plaintiff's Motion.

13   **I.      BACKGROUND**

14           **A.      Plaintiff's Allegations**

15   This case arises from Plaintiff's allegations that Defendant wrongfully

16   terminated Plaintiff's employment and engaged in racial and/or national origin

17   discrimination and retaliation against Plaintiff during her employment.  As alleged in

18   the Complaint, Defendant hired Plaintiff as a past-due payments collector in

19   September 2014.  Compl. ¶ 7.  Plaintiff speaks both English and Spanish, and as a

20   result, beginning May 1, 2015, Defendant required Plaintiff to take on additional,

21   more complex call work as well as interpretation work in addition to her regular

22   commission-based call load.  *Id.* at ¶¶ 7-8, 18.  Plaintiff alleges that she complained

23   to her supervisor that this increased workload was unfair because other, monolingual

24   collectors were not given any additional work, and Plaintiff had not received any pay

25   increase to compensate for the additional work assigned to her.  *Id.* at ¶ 10.

26

27   _____

28   [1]  The captioned name of this matter is *Rosa Aguilar v. Wells Fargo Bank, N.A.*, but the proper spelling of Plaintiff's last name, as alleged and as referenced in the instant Motion, is "Aguilera."  *See* Compl. at 1; Mot. at 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

During this same time period, Plaintiff alleges that Defendant subjected Plaintiff and other Hispanic employees to a "hostile and harassing work environment." *Id.* at ¶ 11.  Plaintiff alleges that Defendant required her and other Hispanic employees to take training phone calls with a supervisor posing as a customer, who would then verbally abuse and berate the Hispanic employees.  *Id.* Plaintiff further alleges that Defendant did not subject any other employees to this training and that the phone calls did not, and were not intended to, provide training for dealing with real customers.  *Id.*

Defendant terminated Plaintiff on May 20, 2015.  *Id.* at ¶ 10.  Plaintiff alleges that the firing occurred only three weeks after she complained to her supervisor about the additional work and training and that Defendant fired her in retaliation for these complaints.  *Id.*  Based on this firing and Defendant's actions during her employment, Plaintiff alleges three causes of action, all under state law: wrongful discharge in violation of public policy, race and/or national origin discrimination, and unlawful retaliation and/or work environment hostility and harassment.  *Id.* at ¶¶ 12-24.

Plaintiff does not allege her rate of pay or total compensation earned during employment with Defendant, but she alleges that, by virtue of Defendant's actions, she has "suffered and continues to suffer damages, in the form of lost wages and other employment benefits, and severe emotional and physical distress, the exact amount of which will be proven at trial."  *Id.* at ¶¶ 14, 19, 23.  She also alleges that Defendant "acted for the purpose of causing plaintiff to suffer financial loss and severe emotional distress and physical distress and [is] guilty of oppression and malice, justifying an award of exemplary and punitive damages." *Id.*at ¶¶ 16, 24.  In addition to compensatory and punitive damages, Plaintiff further seeks  pre- and post-judgment interest, reasonable attorneys' fees and expert witness fees, and costs of suit.  Compl. at 8:2-11.

ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND [DKT NO. 12]

### B.    Defendant's Grounds for Removal

Defendant removed this action on the grounds that this Court has diversity jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000.  Not. of Removal at ¶ 9.  Defendant avers in its Notice of Removal that Plaintiff's hourly rate was $13.00 per hour during her approximately eight months of employment with Defendant.  *See id*. at ¶ 10. Defendant does not assert Plaintiff received any commission payments or other income during her employment.  *Id.*  Nonetheless, Defendant asserts in its Notice of Removal that the amount in controversy exceeds $75,000 because (1) Plaintiff's cumulative lost wages after trial on the merits will likely exceed $35,000; (2) Plaintiff's emotional distress damages may exceed $75,000; (3) Plaintiff may receive a punitive damages award; and (4) "it is reasonable to assume" that Plaintiff will recover more than $75,000 in attorneys' fees.  *Id.* at ¶¶ 10-14.

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction and thus have subject matter jurisdiction only over matters authorized by the Constitution and Congress.  *See Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986).  "Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal," statutes conferring jurisdiction are "strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted).  There is a strong presumption that the Court is without jurisdiction until affirmatively proven otherwise.  *See Fifty Associates v. Prudential Insurance Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1990).  When an action is removed from state court, the removing party bears the burden of demonstrating removal is proper.  *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992).

1    Federal jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be

2  in complete diversity and the amount in controversy exceed $75,000.  See 28 U.S.C.

3  § 1332.  Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state

4  court to federal court if the diversity and amount in controversy requirements of 28

5  U.S.C. § 1332 are satisfied and if "none of the parties in interest properly joined and

6  served as defendants is a citizen of the State in which such action is brought."  28

7  U.S.C. § 1441.

8    The amount in controversy, for purposes of diversity jurisdiction, is the total

9  "amount at stake in the underlying litigation."  *Theis Research, Inc. v. Brown &*

10 *Bain*, 400 F.3d 659, 662 (9th Cir. 2005).  "[I]n assessing the amount in controversy,

11 a court must 'assume that the allegations of the complaint are true and assume that a

12 jury will return a verdict for the plaintiff on all claims made in the complaint.'"

13 *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx 646, 648 (9th Cir. 2012) (quoting

14 *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993,

15 1001 (C.D. Cal. 2002)).

16   "The 'strong presumption' against removal jurisdiction means that the

17 defendant always has the burden of establishing that removal is proper."  *Gaus*, 980

18 F.2d at 566.  And while "'a defendant's notice of removal need include only a

19 plausible allegation that the amount in controversy exceeds the jurisdictional

20 threshold,' . . . '[e]vidence establishing the amount is required'" when "defendant's

21 assertion of the amount in controversy is contested by plaintiff[]."  *Ibarra v.*

22 *Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart*

23 *Cherokee Basin Operating Company, LLC v. Owens*, 135 S.Ct. 547, 554 (2014)); *see*

24 *also Dart*, 135 S.Ct. at 550 (indicating that once removal is challenged, the

25 removing party must prove the amount in controversy by a preponderance of the

26 evidence).

27 //

28 //

4

## III.   DISCUSSION

### A.   Amount in Controversy

The parties agree that they are citizens of different states for purposes of diversity jurisdiction, and the Court finds that Defendant has adequately established the parties' complete diversity of citizenship.  Not. of Removal at ¶ 10; Mot. at 5:27-6:3.  Consequently, the only issue before the Court regarding jurisdiction is whether Defendant has demonstrated that the amount in controversy in this case exceeds $75,000.

In its Notice of Removal, Defendant calculates the amount in controversy by totaling Plaintiff's lost wages through trial based on Plaintiff's hourly rate of pay and estimating her alleged emotional distress damages, punitive damages, and attorneys' fees based on prior employment discrimination cases.  As discussed below, Defendant's calculation of Plaintiff's lost wages is inflated.  Even so, the remainder of Defendant's Notice of Removal presents a short and plain statement plausibly alleging that the amount in controversy exceeds $75,000.  This is sufficient to satisfy the pleading standard established in Rule 8(a) of the Federal Rules of Civil Procedure and applied to removal in *Dart*.  *See* Fed. R. Civ. P. 8(a); *see also Dart*, 135 S. Ct. at 553 ("Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the 'pleading' requirements for removal' and to clarify that courts should "apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.").

Given Plaintiff's challenge to Defendant's removal, Defendant now faces the burden of proving, by a preponderance of the evidence, that the amount in controversy actually exceeds $75,000.  *See Dart*, 135 S.Ct. at 550.  The Court concludes that Defendant has not made this showing.

### 1.   Settlement Demands

As an initial matter, the parties have traded settlement offers and each contends that the settlement offer of the other party supplies persuasive evidence of

5

1    the amount in controversy.  *See* Pl.'s Supp. Reply at 1 and 5-6, Dkt. No. 17; Defs.'

2    Opp. at 2, Dkt. No. 14.  On September 22, 2015, Plaintiff sent Defendant an offer to

3    settle this action for $74,999.  Kassel Decl. in support of Pl.'s Mot. at Ex. 4, Dkt.

4    No. 12.  Defendant declined this offer.  Mot. at 6.  According to Plaintiff's

5    Supplemental Reply, on September 29, 2015, Defendant sent Plaintiff an offer to

6    settle this action for $2,500, which Plaintiff declined.  Dkt. No. 17, Ex. 1.

7            Defendant objected to Plaintiff's Supplemental Reply on the grounds that the

8    September 29 letter was in Plaintiff's possession before she filed her Motion and the

9    Local Rules "contemplate[] a single reply brief."  Def's Obj. at 1, Dkt. No. 18.

10   Plaintiff filed the supplement to her Reply within the time required by Local Rule 7-

11   10, and Local Rule 7-10 does not prohibit such timely supplementation.  Defendant

12   accurately notes, however, that Plaintiff was in possession of the September 29 letter

13   before she filed her Motion on September 30.  Obj. at 1, Dkt. No. 18.  Local Rule 7-

14   10 permits the submission of only "rebuttal evidence" in reply papers, and this

15   September 29 letter constitutes new evidence, not rebuttal evidence.  For this reason,

16   the Court will consider Plaintiff's settlement offer, properly attached to Defendant's

17   Opposition, but will not consider Defendant's settlement offer, improperly presented

18   as new evidence in Plaintiff's Supplemental Reply.[2]

19           Concerning Plaintiff's settlement offer, such an offer may supply "relevant

20   evidence of the amount in controversy if it appears to reflect a reasonable estimate of

21   the plaintiff's claim."  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).

22   The Ninth Circuit held in *Cohn* that the plaintiff's settlement offer of $100,000

23   provided sufficient evidence to establish the amount in controversy because Plaintiff

24   "made no attempt to disavow his letter or offer contrary evidence" that the proposal

25   was anything but an honest assessment of damages.  In contrast, here, Plaintiff does

26   just that – Plaintiff argues that her settlement offer of $74,999 was not representative

27   _____

28   [2]  Additionally, Plaintiff has failed to establish that Defendant's arguably lowball
     settlement offer is a "reasonable estimate of the plaintiff's claim."  *See Cohn v. Petsmart, Inc.*, 281
     F.3d 837, 840 (9th Cir. 2002).

ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND [DKT NO. 12]

1  of her claims in this case but was instead an attempt to "anchor the negotiations in
2  [her] favor by starting the process with a high number."  Reply at 9 (quoting
3  *Vasquez v. CSX Transp. Inc.,* CV 08-05996, 2009 WL 1953052, at *3 (N.D. Ill. July
4  1, 2009)).  Because Plaintiff has expressly denied that her settlement offer accurately
5  assesses the value of her claims, the offer does not constitute valid evidence of the
6  amount in controversy.  *See, e.g., Walker v. CorePower Yoga, LLC,* No. CV 12-
7  00004, 2013 WL 2338675, at *7 (S.D. Cal. May 28, 2013) (distinguishing *Cohn* and
8  holding that because the plaintiff "expressly disavowed" that its settlement offer was
9  an accurate assessment of the claims, "the settlement letter does not appear to reflect
10  a reasonable estimate of Plaintiff's claim, and it is insufficient to establish that the
11  $75,000 amount in controversy requirement is met.").  The Court thus will not
12  consider either party's settlement offer in determining the amount in controversy.

### 2.   Lost Wages

14  While the parties agree that Plaintiff's lost wages should be included in
15  calculating the amount in controversy, they dispute whether Plaintiff's lost wages
16  should be totaled at the time of removal or estimated through the conclusion of trial.
17  The Ninth Circuit has not yet decided the issue, but a persuasive number of
18  California district courts have determined that, because the Court must ascertain its
19  jurisdiction at the time of removal, the amount in controversy includes a plaintiff's
20  alleged lost wages calculated only through the date of removal rather than through
21  the estimated completion of trial.  *See Sasso v. Noble Utah Long Beach, LLC et al.*,
22  No. CV 14-09154, 2015 WL 898468, at *4 (Cal. C.D. Mar. 3, 2015) (J. Birotte)
23  (collecting cases and recognizing that the "weight of authority" indicates the Court
24  should consider lost wages only through the time of removal); *see also Fortescue v.
25  Ecolab Inc.,* No. CV 14-00253, 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014)
26  ("Considering lost wages only up to the time of removal is particularly appropriate
27  here because the FAC does not explicitly demand front pay.").

28

7

1   Furthermore, unlike attorneys' fees authorized by statute (which may be

2   reasonably estimated through trial as discussed below), Plaintiff's lost wages

3   through trial cannot be determined with any certainty past the date of removal.  It is

4   possible Plaintiff will obtain employment before conclusion of the case, and this

5   employment will impact any award for lost wages.  *See Lamke v. Sunstate Equip.*

6   *Co.,* 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004) (holding that in order to

7   determine the amount in controversy, a court may have to consider facts regarding

8   mitigation of damages under the preponderance of the evidence test); *Birkenbuel v.*

9   *M. C. C. Constr. Corp.,* 962 F. Supp. 1305, 1306 (D. Mont. 1997) (holding that

10   where mitigation is a mandatory consideration in the definition of a claim's potential

11   damages, the court must consider evidence of mitigation in deciding whether to

12   remand to state court); *see also Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal.

13   3d 176, 181 (1970) *as cited in* Opp. at 5 (holding lost wages calculation for wrongful

14   termination must subtract sums obtained through mitigation).

15   Defendant has submitted evidence from Lisa Love, an Employee Relations

16   Senior Consultant in charge of Plaintiff's personnel record, who attests that

17   Defendant paid Plaintiff a "base rate" of $13.00 per hour during her eight months of

18   employment.  Love Decl. in support of Def's Opp. at ¶ 3, Dkt. No. 14-5.  Ms. Love

19   does not indicate that Plaintiff earned any other commissions or income.  *Id.*  Thus,

20   Defendant calculates, and Plaintiff does not dispute, that Plaintiff's lost wages at the

21   time of removal totaled approximately $7,800.  Opp. at 5; *see also* Reply at 4.

22   Defendant also asserts that the Court should take into account Plaintiff's

23   healthcare insurance premiums – $125.63 deducted from Plaintiff's paycheck every

24   two weeks.  Opp. at 5-6; Love Decl. in support of Def's Opp. at ¶ 3, Dkt. No. 14-5.

25   But Defendant has not presented evidence of any benefits that Defendant paid to

26   Plaintiff or contributed on her behalf.  Rather, Defendant has presented evidence

27   demonstrating only that $125.63 was deducted from Plaintiff's paycheck every two

28   weeks.  These deductions are just that – paycheck deductions – and therefore the

8

Court does not include them in its lost wages calculation. *C.f., e.g., Ceja-Corona v. CVS Pharmacy,* No. CV-01703, 2013 WL 638293, at *6 (E.D. Cal. Feb. 12, 2013) *report and recommendation adopted*, No. CV-01703, 2013 WL 1281581 (E.D. Cal. Mar. 27, 2013) (considering evidence of employment benefits where Defendant submitted evidence of health benefits paid by Defendant).

Finally, Defendant notes that Plaintiff has alleged she has incurred medical expenses for the emotional and physical distress she suffered as result of Defendant's alleged retaliation.  Opp. at 6 (citing Compl. ¶ 15).  Defendant does not present any evidence quantifying these medical expenses, however.  The Court therefore cannot speculate as to the amount of medical expenses that are in dispute and can estimate only that Plaintiff may be awarded more than a nominal amount.

### 3.   Emotional Distress Damages

Emotional distress damages may be considered in determining the amount in controversy, and where the plaintiff does not allege any specific amount of such damages, as here, the removing party may submit evidence of jury verdicts in similar cases.  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir.2005); *see also Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002).  But "[w]hile settlements and jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue."  *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012).

Via an attorney declaration, Defendant cites to a number of California cases it contends are similar to this action and resulted in damages awards for emotional distress in a range of $34,162 to $384,000.  Opp. at 7 (citing Escalante Decl. ¶ 4).  Of these cases, Defendant identifies five that resulted in specific awards for emotional distress.  According to Defendant's own summaries, however, none of these cases are sufficiently analogous to prove that Plaintiff will be awarded anywhere close to the same range of emotional distress damages.

9

1    In *Allen v. Radio Shack*, for example, Defendant's summary indicates that the
2    plaintiff there – a middle-aged African American – had worked for the defendant for
3    12 years and was an exemplary employee, but that defendant told the plaintiff point-
4    blank that he "did not fit the image" of what the defendant wanted for management,
5    wrote up the plaintiff for bogus policy violations, and then terminated the plaintiff
6    and replaced him with a young, white applicant.  Escalante Decl., Ex. B.  In *Marlo v.*
7    *UPS*, the plaintiff worked for UPS for two years before being fired in retaliation for
8    serving as the named plaintiff in a class action against UPS valued at $400 million
9    and also serving as a witness at an OSHA hearing on UPS's safety violations and
10   notifying UPS that he intended to unionize with other UPS supervisors.  *Id.*  The
11   plaintiff further proved that before being fired, he had been detained by two private
12   detectives employed by the defendants who harassed him and told him he had "no
13   choice" but to answer questions about his work at UPS.  *Id.*  Defendant's summary
14   provides no details about the plaintiff in *Stallworth v. City of Los Angeles*, only that
15   the plaintiff was an African American police officer who had been denied a pay
16   grade advancement.  *Id.*  In *Wang v. Rees Scientific Corporation*, the plaintiff, an
17   Asian woman, was one of the company's top salespersons and the leading
18   salesperson in the company's western region who was subjected to questioning
19   concerning family and marriage issues and then terminated without medical
20   coverage in the transition (despite being pregnant) in favor of a white man whose
21   three-year sales record amounted to less than one of plaintiff's years of sales.  *Id.*
22   And finally, in *Green v. Yucaipa Towing Inc.*, the plaintiff, a homosexual man, was
23   awarded only $34,162 in emotional distress damages despite being subjected to
24   extreme harassment as his job, including being photoshopped into offensive photos,
25   being called a number of offensive names, and being locked into a portable restroom
26   and nearly tipped over, and then finally terminated in retaliation for his reports of the
27   harassment.  *Id.*
28

ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND [DKT NO. 12]

None of the cases that Defendant cites are sufficiently analogous to establish that Plaintiff will be entitled to a similar award of emotional distress damages. Defendant's summary of *Stallworth* provides no details indicating the basis for the emotional distress damages award.  The plaintiffs in *Allen* and *Wang* had long, successful histories with their companies that supported an inference that their terminations were retaliatory.  In contrast, here, Plaintiff worked at Wells Fargo for less than a year and has not alleged any significant accomplishments in that time period.  The plaintiff in *Marlo* was physically detained and threatened after he engaged in significant whistleblower activities.  In contrast, Plaintiff has not alleged that she was singled out from other Hispanic employees during training or that her complaints of discrimination rose to the same level as the complaints brought by the plaintiff in *Marlo*.  Finally, and perhaps most notably, the plaintiff in *Green* suffered significantly worse forms of harassment and discrimination than the Plaintiff alleges here, but was awarded the lowest amount of damages in the range Defendant identifies – less than $35,000.

Defendant submits only that because these other employment discrimination cases have resulted in large awards for emotional distress damages, Plaintiff may also receive such an award.  This argument is speculative, however.  It does not support a conclusion that Plaintiff will be awarded emotional distress damages in the range that Defendant identifies.  *See, e.g., Arita v. Rite Aid Corp.*, No. CV 13-05497, 2014 WL 358400, at *2 (C.D. Cal. Jan. 31, 2014) ("While Defendant gives examples of cases where emotional distress claims resulted in damage awards in excess of $75,000, Defendant has not adequately explained how those claims and fact patterns are similar to this case.  In the absence of any justification the court will not speculate as to the damages potentially embodied in the plaintiffs' vague request for emotional distress." (quotations omitted)); *Rybalnik v. Williams Lea Inc.,* No. CV 12-04070, 2012 WL 4739957, at *3 (C.D. Cal. Oct. 4, 2012) ("Simply put, merely pointing to cases where juries have awarded hefty damages sums in the past without

11

1  further explanation (by facts or evidence) how the facts in those cases compare to

2  the facts presented here is entirely insufficient to meet [defendant's] burden to

3  establish the amount in controversy by a preponderance of the evidence."); *Cable v.*

4  *Merit Life Ins. Co.,* No. CV 06-00804, 2006 WL 1991664, at *3 (E.D. Cal. July 14,

5  2006) ("Defendant argues Plaintiff might recover a significant amount of emotional

6  distress damages at trial because juries have awarded 'emotional distress damages ...

7  in excessive amounts' in other cases. . . . Defendant fails to explain how the

8  extraordinary facts of these cases are analogous to the facts of this case. As a result,

9  Defendant provides no reliable basis for determining the amount of emotional

10  distress damages likely to be recovered in this case.") (citations omitted).

11       The Court concludes, in light of Defendant's failure to present any analogous

12  cases, it would be speculative to include Defendant's estimated emotional distress

13  damages in the total amount in controversy.  *See, e.g., Nawab v. Markel Ins. Co.,*

14  No. CV 08-05750, 2009 WL 5216921, at *3 (N.D. Cal. Dec. 30, 2009)

15  ("[Defendant] fails to submit any reliable evidence to suggest that a potential award

16  of emotional distress damages could sufficiently increase the amount in controversy

17  to meet the jurisdictional requirement."); *Mireles*, 845 F.Supp.2d at 1055

18  (remanding where defendants "proffer[ed] no evidence that the lawsuits and

19  settlements alleged in the complaint are factually or legally similar to plaintiffs'

20  claims.").

21                    **4.    Punitive Damages**

22        "It is well established that punitive damages are part of the amount in

23  controversy in a civil action," when they may be recovered through one or more of a

24  plaintiff's claims.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001)

25  *superseded by statute on other grounds as stated in Bayol v. Zipcar, Inc.,* No. CV

26  14-02483, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015).  Here, Plaintiff

27  appears to allege two claims under California's Fair Employment and Housing Act

28  ("FEHA"), which allows for recovery of punitive damages.  *See* Compl. ¶¶ 18, 22;

*Commodore Home Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 220, 221 (1982) ("[I]n a civil action under FEHA, all relief generally available in noncontractual actions, including punitive damages, may be obtained").  Accordingly, the Court may consider Plaintiff's claim for punitive damages in calculating the amount in controversy.  And as with emotional distress damages, when the plaintiff has not specified an amount of punitive damages sought, the removing party "may introduce evidence of jury verdicts in cases involving analogous facts" in order to establish probable punitive damages.  *Simmons*, 209 F. Supp. 2d at 1033.

Defendant cites to the same cases discussed above to argue that Plaintiff's claim for punitive damages could fall into a range between $300,000 and $15 million.  Opp. at 8.  As discussed above, however, these cases do not contain sufficiently analogous facts to allow the Court to rely on their verdicts to calculate the possible punitive damages at issue in the present case.  Consequently, as with emotional distress damages, the Court cannot properly consider Defendant's punitive damages estimate in determining the amount in controversy.  *See, e.g., Foltz v. Integon Nat. Ins. Co*., No. CV 14-00907, 2014 WL 4960765, at *5 (E.D. Cal. Oct. 2, 2014) (declining to include defendant's punitive damages estimate in determining the amount in controversy where estimated amount of punitive damages was speculative); *Antonelli v. Time Warner Entm't-Advance/Newhouse P'ship*, No. CV 11-00812, 2011 WL 2712554, at *2 (C.D. Cal. July 13, 2011) ("Defendant submits no evidence and no underlying facts that establish the actual amount in controversy.  Conclusory assertions and general citations to cases, without any discussion or support, are simply not enough. Nor does Defendant show that damages of greater than $75,000 have been awarded in cases that are factually similar to this one."); *Ohanian v. Victoria Fire & Cas. Co*., No. CV 11-05602, 2011 WL 3319884, at *3 (C.D. Cal. Aug. 1, 2011) ("A defendant can introduce other jury verdicts to bolster its claim that potential punitive damages would raise the amount

1   in controversy to over $75,000, but those jury verdicts must involve facts analogous
2   to its own case.") (quotations omitted).

### 5.    Attorneys' Fees

4           Finally, "where an underlying statute authorizes an award of attorney's fees,
5   either with mandatory or discretionary language, such fees may be included in the
6   amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.
7   1998).  A split of authority persists concerning whether post-removal legal costs
8   should be included, but this Court and several others in the district have recently
9   held that "post-removal attorneys' fees authorized by law are part of the amount in
10  controversy." *Sawyer v. Retail Data, LLC*, No. CV 15-0184, 2015 WL 3929695, at
11  *2 (C.D. Cal. Apr. 29, 2015) (citing *Sasso*, *supra*, 2015 WL 898468, at *5); *see also,*
12  *e.g., Garcia v. ACE Cash Express, Inc*., No. CV 14–00285, 2014 WL 2468344, at *5
13  (C.D. Cal. May 30, 2014); *Brady v. Mercedes–Benz USA, Inc.,* 243 F. Supp. 2d
14  1004, 1011 (N.D. Cal. 2002) (collecting cases and concluding that post-removal fees
15  contribute to amount in controversy when fees are authorized by law).

16          Here, Plaintiff seeks attorneys' fees under a number of statutes, including Cal.
17  Gov't Code § 12965, part of the FEHA.  *See* Compl. at 8:5-8.  Section 12965
18  expressly authorizes the prevailing party's recovery of fees, and accordingly, "they
19  are properly considered part of the amount in controversy" here.  *See Ponce v. Med.*
20  *Eyeglass Ctr., Inc*., No. CV 15-04035, 2015 WL 4554336, at *3 (C.D. Cal. July 27,
21  2015) (citing Cal. Gov't Code § 12965); *see also, e.g., Sawyer, supra,* 2015 WL
22  3929695, at *3 ("Here, Sawyer's claim for fees is authorized by Cal. Gov't Code §
23  12965(b), and thus her post-removal attorneys' fees are part of the 'amount at stake'
24  in the action.").

25          Defendant asserts that the proper average attorney rate is $300 an hour and
26  that the Court should estimate that Plaintiff's counsel will spend between 100 and
27  300 hours litigating the matter.[3]  Opp. at 9.  Several courts in this district, including
28

---

[3] According to Plaintiff's counsel, his hourly rate is $450 an hour (*See* Kassel Decl., ¶ 6),

14

this Court, have taken this approach and determined that a reasonable, conservative estimate for attorneys' fees in a wrongful termination case is to multiply an average rate of $300 with an estimated 100 hours of work.  *See, e.g., Garcia*, *supra*, 2014 WL 2468344, at *5; *Sasso*, *supra*, 2015 WL 898468, at *6; *Ponce*, *supra*, 2015 WL 4554336, at *4; *see also Simmons,* 209 F. Supp. 2d at 1035 (recognizing that "a race discrimination claim will undoubtedly require substantial effort from counsel" but also noting that "the percentage of cases that ultimately go to trial is very small"). The Court will adhere to this same estimate and concludes that Plaintiff's demand for attorneys' fees adds at least $30,000 to the amount in controversy.

In sum, Defendant has presented evidence to establish that the amount in controversy equals at least Plaintiff's lost wages of $7,800 plus attorneys' fees of $30,000, for a total of $37,800.  Even assuming Plaintiff is awarded more than nominal amounts for medical expenses, emotional distress damages, and punitive damages, however, Defendant's evidence and arguments do not prove by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000.  Defendant has thus failed to establish this Court's subject matter jurisdiction. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold.  Where doubt regarding the right to removal exists, a case should be remanded to state court.").

## B.   Attorneys' Fees For Motion To Remand

Plaintiff seeks to recover attorneys' fees for its motion to remand under 28 U.S.C. § 1447(c).  Mot. at 6-7.  Under Section 1447(c), an order granting a party's motion to remand "may require payment of just costs and any actual expenses,

---

but Defendant apparently concedes that $300 an hour is a more appropriate rate to apply as an average.

including attorney fees, incurred as a result of the removal."  "Absent unusual circumstances," however, such a fees award is only available where "the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005); *see also Lussier v. Dollar Tree Stores, Inc*., 518 F.3d 1062, 1065 (9th Cir. 2008).  Here, there is no evidence to support an award of fees to Plaintiff.  Plaintiff has identified no unusual circumstances surrounding Defendant's removal, and Defendant's removal was not unreasonable given that the parties are admittedly diverse and the Plaintiff's allegations present at least the possibility of recovery over $75,000, provided that analogous cases supported the calculation.  *See Lussier*, 518 F.3d at 1065 ("[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.").  The Court thus declines to award attorneys' fees to Plaintiff.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion to Remand (Dkt. No. 12) but **DENIES** Plaintiff's request for attorneys' fees.  It is **ORDERED** that the above-captioned action shall be remanded to the Superior Court of the State of California for the County of San Bernardino.  The Clerk shall send a certified copy of this Order to the state court.

**IT IS SO ORDERED.**

DATED: November 4, 2015   _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE